IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| D'ANDRE R. ROGERS and JERRY McGINNIS, JR.,<br><br>Plaintiffs,<br><br>v.<br><br>TRUMAN MEARS, JOSHUA NIBLETT, KEVIN BATES, CLAYTON MORGAN, JOHN BECK, MARVELLA WISE, RODNEY HUDSON, and MICHAEL MAANS,<br><br>Defendants. | Civil Action No. 22-596-GBW |

Jeff Castellano, Matthew S. Middleton, Angela C. Whitesell, DLA PIPER LLP (US), Wilmington, DE; Derek Gretkowski, Gregory Ferroni, DLA PIPER LLP (US), Philadelphia, PA; Nancy C. Braman, DLA PIPER LLP (US), Boston, MA.

*Counsel for Plaintiffs*

Lynn A. Kelly, Aaron C. Baker, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE.

*Counsel for Defendants*

MEMORANDUM OPINION

November 17, 2025
Wilmington, Delaware

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

On September 8, 2023, Plaintiffs D'Andre Rogers ("Mr. Rogers" or "Rogers") and Jerry McGinnis, Jr. ("Mr. McGinnis" or "McGinnis") (collectively, "Plaintiffs") filed their Second Amended Complaint against Defendants Truman Mears ("Mears"), Joshua Niblett ("Niblett"), Kevin Bates ("Bates"), Clayton Morgan ("Morgan"), John Beck ("Beck"), Marvella Wise ("Wise"), Rodney Hudson ("Hudson"), and Michael Maans ("Maans") (collectively, "Defendants"). D.I. 51.

Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint ("Defendants' Motion") (D.I. 53), which has been fully briefed (D.I. 54; D.I. 56; D.I. 59). For the reasons set forth below, the Court grants-in-part and denies-in-part Defendants' Motion.

I.     **FACTUAL BACKGROUND**

The following are allegations from Plaintiffs' Second Amended Complaint (D.I. 51), which are taken as true for the purpose of resolving Defendants' Motion.

    A.     **The Parties.**

Plaintiffs: Mr. Rogers is an inmate at Sussex Correctional Institution ("SCI"). D.I. 51 ¶ 5. Mr. McGinnis was an inmate at SCI. D.I. 51 ¶ 6.

Defendants: Defendants are all alleged "[u]pon information and belief" to be employees of the Delaware Department of Correction ("DOC") which operates SCI. D.I. 51 ¶¶ 7-14. During all relevant times, Mears was the Warden at SCI (D.I. 51 ¶ 7); Niblett was a Captain at SCI (D.I. 51 ¶ 8); Bates, Morgan, and Maans were all Lieutenants at SCI (D.I. 51 ¶¶ 9, 10, 14); Beck was a Deputy Warden at SCI (D.I. 51 ¶ 11); Wise was a Major at SCI (D.I. 51 ¶ 12); and Hudson was a Sergeant at SCI (D.I. 51 ¶ 13).

### B. July 2020 – Black Mold Appears in the Shower Facility of SCI's Medium Security Building.

While incarcerated, Plaintiffs had access to one room with a shower within SCI's medium security building. D.I. 51 ¶ 18. In or around July 2020, black mold began to appear on the "tile floors and/or walls" of the shower facility. *Id.* Starting around the same time, Mr. Rogers began to experience shortness of breath while showering. D.I. 51 ¶ 19.

In or around July 2020, Mr. Rogers requested bleach from Hudson so that he could attempt to remove the mold, Hudson refused to provide the bleach, and Mr. Rogers filed a grievance with SCI. D.I. 51 ¶ 20. No action was taken by SCI. *Id.* Prior to July 2020, bleach had been provided to inmates "upon request for purposes of cleaning the facilities." *Id.*

Due to the black mold, Mr. Rogers's symptoms became "progressively worse": he began to experience chest pains and asthma attacks, faint in the shower facility, and notice other inmates also fainting in the shower facility. D.I. 51 ¶ 21. While Mr. Rogers had asthma as a child, his attacks occurred "more frequently" once the black mold appeared. *Id.* During this time, Mr. Rogers filed several grievances. D.I. 51 ¶ 22. "Defendants Mears, Niblett, Bates, Maans, Wise, Hudson, and Beck were involved in the decision to deny Rogers's grievances." *Id.*

Mr. McGinnis first experienced the black mold in or around August 2020. D.I. 51 ¶ 23. He began to experience symptoms, including trouble breathing and sinus pain, and made several sick calls that started in or around September 2020, "but his symptoms were ignored[,] and he was given allergy medication and nasal spray." *Id.*

### C. June 2021 – SCI Unsuccessfully Cleans the Shower Facility, and the Shower Facility is Inspected by the American Correctional Association.

"[I]n or around June 2021, SCI arranged for an individual to power wash the mold and then to paint over it." D.I. 51 ¶ 24. This power wash "simply covered" the black mold for a brief time and did not "remediate the black mold." *Id.* The power wash and paint were ordered by "at least

3

Defendants Mears, Niblett, Bates, and Maans, not in response to Mr. Rogers's grievances, but because the prison was to be inspected by the American Correctional Association ('ACA')." *Id.* During that ACA inspection, Plaintiffs informed inspectors that there was black mold in the shower facility, but "Defendants Niblett, Hudson, and Bates told the ACA inspectors that there was no black mold." *Id.*

Ultimately, the mold returned, and so did Mr. Rogers's symptoms. D.I. 51 ¶ 25. Mr. Rogers took samples of the black mold and sent them to the Occupational Safety and Health Association ("OSHA") for testing. D.I. 51 ¶ 26. This testing confirmed the existence of black mold. *Id.*

### D. January 2022 – Plaintiffs File Grievances Regarding the Return of the Black Mold.

"In or around January 2022, Rogers filed another grievance related to the black mold." D.I. 51 ¶ 29. Bates presided over the grievance hearing and "stated that the substance in the shower was not mold." *Id.* Bates further stated that, "if Rogers continued to file grievances[,] he would retaliate by writing Rogers up for lying." *Id.* Mr. Rogers then showed Bates and two other officers the mold in the shower, and they denied that it was mold; instead, they stated that the shower needed to be power washed. *Id.* That shower had been power washed the day prior. *Id.*

In January 2022, Mr. McGinnis filed a grievance regarding the black mold, which was combined with Mr. Rogers's grievance. D.I. 51 ¶ 30. Plaintiffs' grievances were upheld. D.I. 51 ¶ 31. In January 2022 or February 2022, Mears "claimed that he had hired an outside contractor to remediate the showers" but instead "directed another inmate [to] spray the showers and the floors with an orange cleaning solution." *Id.* The inmate was further ordered to "water down, thus diluting, the orange solution." *Id.* The black mold continued to grow. *Id.*

4

When Mr. Rogers spoke with Hudson regarding the outside contractor, Hudson stated that SCI did not engage an outside contractor. D.I. 51 ¶ 32. Rogers explained the black mold to Hudson, reiterating his request for bleach, and explained that SCI needed to resolve the mold in the showers. *Id.* "Hudson denied Rogers['s] request and refused to assist[,] claiming that he (Hudson) did not have to live there." *Id.*

### E. Plaintiffs' Allegations of Retaliation.

Following the filing of Mr. Rogers's first grievance, Niblett "began threatening Rogers," telling him that Rogers's building was "his building" and that he would "'bring every gun' to protect it.'" D.I. 51 ¶ 34. "Following Niblett's lead, Defendants Maans, Bates, and Hudson have threatened and retaliated against Rogers for filing his grievances and filing the Original Complaint in this case." *Id.* Mr. Rogers has been ordered to work in the kitchen, but should not have been, since he was physically unable to do so. D.I. 51 ¶ 35. Moreover, Mr. Rogers was written up because he raised his medical condition; however, "the stated reason for the write up was pretext" because he was "written up for filing his grievances to remediate the black mold." *Id.*

Since the filing of the Original Complaint in this action, "Defendants Niblett, Maans, Bates, and/or Hudson engaged in concert in a series of retaliatory activity," including a "baseless[]" write up for contraband possession and "additional and more frequent pat downs and searches than in his prior years of incarceration." D.I. 51 ¶ 36.

## II. PROCEDURAL HISTORY

On May 2, 2022, this action was commenced by six plaintiffs proceeding *pro se*—Mr. Rogers, Mr. McGinnis, Evan Dayton ("Dayton"), Jason Kashner ("Kashner"), Darnell Seeney ("Seeney"), and La'Teef Dickerson ("Dickerson")—against Defendants. D.I. 3 (Original Complaint). On July 12, 2022, the Court issued an Oral Order requiring the Plaintiffs to sign the

5

n/a
n/a

Original Complaint. D.I. 27. Seeney was dismissed by the Court on September 16, 2022 for failure to sign the Original Complaint. D.I. 43.

On November 14, 2022, the Court issued a Memorandum Opinion under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(a) dismissing Dayton, McGinnis, Kashner, and Dickerson, leaving only Mr. Rogers. D.I. 44 at 9-10; *Rogers v. Mears*, Civ. No. 22-596-GBW, 2022 WL 16948758, at *4 (D. Del. Nov. 14, 2022). In the accompanying Order, the Court ordered that "[Mr.] Rogers may proceed with the conditions of confinement claims raised against Defendants [Mears, Niblett, Bates, and Hudson]." D.I. 45. All other defendants, and the claims against them, were dismissed. *Id.* The Court further stayed the matter pending an attempt to refer representation of Mr. Rogers. *Id.*

On September 8, 2023, after having obtained counsel, Plaintiffs filed their Second Amended Complaint which is the operative pleading. D.I. 51. The Second Amended Complaint alleges causes of action by both Plaintiffs against all Defendants for (1) violation of the Eighth Amendment of the United States Constitution as applied through the Due Process Clause of the Fourteenth Amendment (D.I. 51 ¶¶ 37-44), and (2) violation of Article 1, Section 11 of the Delaware Constitution (D.I. 51 ¶¶ 45-48). The Second Amended Complaint further alleges a third cause of action, brought only by Mr. Rogers against Defendants Niblett, Maans, Bates, and Hudson, for violation of Article 1, Section 11 of the Delaware Constitution (D.I. 51 ¶¶ 49-54).

On February 2, 2024, Defendants filed their Motion. D.I. 53. Defendants' Motion has been fully briefed. D.I. 54; D.I. 56; D.I. 59. The Court now turns to the merits of Defendants' Motion.

## III. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

In evaluating a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, No. 17-3184, 2018 WL 11446482 (3d Cir. Apr. 6, 2018). Rule 12(b)(6) requires the Court to "accept all factual allegations in a complaint as true and take them in the light most favorable to [the plaintiff]." *Brady v. Static Media*, Civ. No. 23-1078-GBW, 2024 WL 4103719, at *2 (D. Del. Sept. 6, 2024).

"A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420). The "movant bears the burden of demonstrating that the

7

complainant failed to state a claim upon which relief may be granted." *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, Civ. No. 23-239-KAJ, 2024 WL 2804703, at *1 (D. Del. May 31, 2024) (Jordan, J., sitting by designation) (citing *Young v. West Coast Indus. Relations Ass'n, Inc.*, 763 F. Supp. 64, 67 (D. Del. 1991)).

### B. Eighth Amendment Deliberate Indifference as Incorporated by the Fourteenth Amendment

"The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660, 666 (1962), prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Hudson v. McMillian*, 503 U.S. 1 (1992)). "The [Eighth] Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care and must 'take reasonable measures to guarantee the safety of the inmates' . . . ." *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

In the Third Circuit, "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (alterations in original) (quoting *Farmer*, 511 U.S. at 834).

8

"To satisfy the objective prong of this test 'the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.'" *Porter*, 974 F.3d at 441 (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019)). "The proof necessary to show that there was a substantial risk of harm is less demanding than the proof needed to show that there was a probable risk of harm." *Id.* (quoting *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 227 (3d Cir. 2015)).

"To satisfy the subjective prong of the Eighth Amendment test, an inmate must show that the prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Porter*, 974 F.3d at 444 (quoting *Chavarriaga*, 806 F.3d at 229)). "The inmate 'may demonstrate deliberate indifference by showing that the risk of harm was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past such that defendants must have known about the risk.'" *Id.* at 445 (quoting *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259 (3d Cir. 2010)).

## IV. DISCUSSION

Defendants move to dismiss all counts in the Second Amended Complaint for failure to state a claim. D.I. 53. As discussed in more detail below, Defendants' Motion is granted-in-part and denied-in-part. Specifically, the Court grants Defendants' Motion as to all Defendants with respect to the second and third causes of action; and the Court grants Defendants' Motion as to Defendants Morgan, Beck, Wise, and Maans with respect to Plaintiffs' first cause of action. Plaintiffs have adequately stated their first cause of action against Defendants Mears, Bates, Hudson, and Niblett.

### A. Plaintiffs' First Cause of Action, Deliberate Indifference Under the Eighth and Fourteenth Amendments, is Partially Dismissed

All Defendants move to dismiss Plaintiffs' first cause of action. D.I. 53. For purposes of resolving Defendants' Motion, Defendants have conceded the objective prong of the deliberate indifference analysis. D.I. 54 at 12 ("For the purposes of the Motion, Defendants (as they must) accept as true that the black mold in the showers of the Medium Building caused Plaintiffs to experience serious medical symptoms – or an exacerbation thereof – *sufficient to adequately plead the objective component of Plaintiff[s'] conditions of confinement claim*.") (emphasis added). Therefore, in the following subsections, the Court addresses the specific allegations brought against each Defendant and the parties' arguments as it pertains to the subjective prong of the deliberate indifference analysis under the Eighth and Fourteenth Amendments of the Constitution.

#### 1. Defendant Morgan

Defendant Morgan is named only once in the Second Amended Complaint, and only to state his position at SCI. D.I. 51 ¶ 10; *see also* D.I. 54 at 13.[1] There are no other allegations in the Second Amended Complaint relating to Morgan's involvement in the alleged deprivation of Plaintiffs' constitutional rights. *See Hall v. Gamez*, Civ. No. 23-284-GBW, 2025 WL 843277, at *4 (D. Del. Mar. 18, 2025) ("A defendant in a civil rights action 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'") (quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007)). Thus, with respect to Morgan, Plaintiffs have failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

---

[1] Plaintiffs do not dispute Morgan's dismissal. *See* D.I. 56 at 7 ("[T]he Court should deny Defendants' motion to dismiss Count I as to each Defendant, with the exception of Morgan.").

10

2. <u>Defendants Beck and Wise</u>

Defendants Beck and Wise, outside of the paragraphs naming their positions (D.I. 51 ¶¶ 11-12), are each named in only one allegation in the Second Amended Complaint. *See* D.I. 54 at 13-14. That allegation states solely that, "[o]n information and belief, Defendants Mears, Niblett, Bates, Maans, Wise, Hudson, and Beck were involved in the decision to deny Rogers's grievances." D.I. 51 ¶ 22.

Defendants contend that this involvement is insufficient to support Plaintiffs' deliberate indifference claims, asserting that such allegations are "too vague to be accepted as true" and "are merely consistent with the *possibility* of liability" with respect to Defendants Beck and Wise. D.I. 54 at 13-14 (emphasis in original) (citing *Iqbal*, 556 U.S. at 679). Defendants add that "[t]here are no other facts alleged against Defendants Beck and Wise that show that they had knowledge of the 'black mold' and its effects on Plaintiffs or others." *Id.* at 14. In opposition, Plaintiffs concede that they have "less insight" into the conduct of Defendants Beck and Wise, but should be permitted an opportunity to take discovery to ascertain "their knowledge at the time of the grievance" and "test the well-pleaded allegations in the [Second Amended Complaint]." D.I. 56 at 7.

The Court agrees with Defendants that these allegations are insufficient to show that Defendants Beck and Wise were deliberately indifferent because mere allegations of their "involve[ment]" are insufficient to create the inference that they acted wrongfully in the alleged deprivation of Plaintiffs' constitutional rights. *See Flores v. Emig*, Civ. No. 25-100-GBW, 2025 WL 1638366, at *7 (D. Del. June 9, 2025) (finding that an excessive force claim was not stated as to certain prison official defendants because the complaint merely pled that they were "present" and "involved" in the alleged attack, but did not plead any other facts to support the excessive

11

force claim). Thus, with respect to Beck and Wise, Plaintiffs have failed to plead "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 547.

        3.    <u>Defendant Mears</u>

According to the Second Amended Complaint, Defendant Mears was (1) "involved in the decision" denying Mr. Rogers's grievances following the first appearance of the black mold (D.I. 51 ¶ 22); (2) ordered the June 2021 power wash and paint of the showers (D.I. 51 ¶ 24); and (3) claimed in January or February of 2022 that he had hired an outside contractor to clean the showers, but instead directed an inmate to spray the showers with a watered down, orange solution (D.I. 51 ¶ 31).

Defendants contend that Mears' actions are insufficient to give rise to liability because (1) they are not sufficient to show that Defendant Mears had "knowledge of the 'black mold' and its effects on Plaintiffs or others," and (2) show that Mears acted "reasonably" to abate the black mold. D.I. 54 at 15-16.

However, the Court is not persuaded by Defendants' contentions. According to the Second Amended Complaint, by January or February of 2022, Mr. Rogers had filed numerous grievances, made sick calls, was suffering serious symptoms, and had received pulmonology results indicating that his lung age was 93 years old (when Rogers was 34 years old at the time) (D.I. 51 ¶¶ 20-22, 27-28); Mr. McGinnis had made "several sick calls" and filed a grievance (D.I. 51 ¶¶ 23, 30); SCI had tried, unsuccessfully, to power wash and paint the mold (D.I. 51 ¶ 24); and OSHA had tested the mold and confirmed it was black mold (D.I. 51 ¶ 26). Plus, it is alleged that "Mears had responsibility for all activity within SCI." D.I. 51 ¶ 7; *see also Gibbs v. Carney*, Civ. No. 20-01301-SB, 2022 WL 3681327, at *5 (D. Del. Aug. 25, 2022) (Bibas, J., sitting by designation) (finding that a prison warden was deliberately indifferent where the prison warden was responsible for overseeing the prison and it was plausible that he "knew of and acquiesced" in the actions of

prison staff). Accepting Plaintiffs' factual allegations as true, as the Court must, it is plausible that Mears had knowledge of the black mold in the medium security prison shower. *See Iqbal*, 556 U.S. at 678; *see also Gibbs*, 2022 WL 3681327, at *5. Moreover, it is plausible that Mears acted unreasonably to abate those conditions when he did not hire an outside contractor to remediate the black mold, despite claiming that he would do so. Thus, the Court declines to dismiss Plaintiffs' first cause of action as against Mears because Plaintiffs have pled "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 547.

        4.     Defendants Niblett, Bates, Hudson, and Maans

The Court has previously found, with respect to the Original Complaint, that an Eighth Amendment claim was stated as to Niblett, Bates, and Hudson, but not Maans. *Rogers*, 2022 WL 16948758, at *3.

The Second Amended Complaint alleges that Defendants Niblett, Bates, Hudson, and Maans were "involved in the decision" denying Mr. Rogers's grievances following the first appearance of the black mold. D.I. 51 ¶ 22. The Second Amended Complaint also alleges that: (1) Hudson refused to provide Mr. Rogers bleach in or around July 2020, despite bleach having been provided to inmates upon similar requests, and denied a similar request in 2022 (D.I. 51 ¶¶ 20, 32); (2) Defendants Niblett, Bates, and Maans (but not Hudson) were responsible for ordering the June 2021 power wash and paint of the showers (D.I. 51 ¶ 24); (3) Defendants Niblett, Hudson, and Bates (but not Maans) told the ACA inspectors that there was no black mold, despite the fact that the power wash and paint "did not remediate the black mold" (*id.*); and (4) Bates "refused to admit" that the substance was mold in or around January 2022 (D.I. 51 ¶ 29).

As to Defendant Maans, a claim has not been stated, as his mere involvement in the decision to deny Mr. Rogers's grievances is insufficient to establish deliberate indifference. *See Flores*, 2025 WL 1638366, at *7. Similarly, Maans's alleged participation in ordering the June

13

2021 power washing and painting is insufficient, since Plaintiffs have not alleged facts showing that this was not a "reasonable measure[] to abate [the black mold]." *See Porter*, 974 F.3d at 444 (quoting *Chavarriaga*, 806 F.3d at 229). Thus, with respect to Maans, Plaintiffs have failed to plead "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 547.

As to Defendants Niblett, Bates, and Hudson, Plaintiffs have adequately pled a cause of action. Niblett, Hudson, and Bates told inspectors during the ACA inspection that there was no black mold in the showers, even though the June 2021 power wash and paint failed to remediate the black mold. Drawing all reasonable inferences in favor of Plaintiffs, as the Court must, it is plausibly alleged that Niblett, Hudson, and Bates knew that the power wash and paint had failed to remediate the black mold, but still told the inspectors that there was no black mold in the showers. Moreover, Hudson twice-denied Mr. Rogers access to bleach to clean the shower facility; and, despite having been shown the black mold, Bates refused to admit the existence of the black mold in or around January 2022. Thus, the Court declines to dismiss Plaintiffs' first cause of action as against Niblett, Bates, and Hudson because Plaintiffs have pled "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 547.

**B.   Plaintiffs' Second Cause of Action, Alleging Violations of Article I, Section 11 of the Delaware Constitution, is Dismissed with Prejudice**

The dispositive issue with respect to Plaintiffs' second cause of action, arising under Article I, Section 11 of the Delaware State Constitution ("Article I, Section 11"),[2] is whether a private right of action exists under that provision. However, "Delaware law does not recognize

---

[2] Article I, Section 11 states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted; and in the construction of jails a proper regard shall be had to the health of prisoners." Del. Const. art. I, § 11.

14

private causes of action" for violations of Article I, Section 11. *Rodriguez v. Cahall*, Case No. N20C-01-201-FJJ, 2023 WL 569358, at *6 (Del. Super. Ct. Jan. 27, 2023) (citing *Winter v. Richman*, Civ. No. 17-1322-LPS, 2020 WL 6940760, at *3 (D. Del. Nov. 25, 2020) (predicting that "Delaware state courts would decline to find a private right of action with respect to Article I Section 11")).

Defendants contend that this claim should be dismissed for the reasons stated in *Winter v. Richman*, where the court held no private right of action exists under Article I, Section 11. D.I. 54 at 16 (citing 2020 WL 6940760, at *3). This Court agrees.

In *Winter*, the court analyzed whether Delaware state courts would recognize a private right of action under *Schueller v. Cordrey*, where the Delaware Superior Court found that there was no private right of action under Article I, Section 6 of the Delaware State Constitution. *See id.* (citing *Schueller v. Cordrey*, No. N14C-10-201-EMD, 2017 WL 568344, at *2 (Del. Super. Ct. Feb. 13, 2017)).

The *Winter* court interpreted *Schueller* to set forth four "factors" to be considered when deciding whether to recognize a novel cause of action under the Delaware State Constitution: whether

> (i) the plaintiff had alternative remedies available to him through a common law tort action for battery or gross negligence, both of which allowed the plaintiff the opportunity to recover damages for the unlawful or excessive use of force, and the plaintiff had brought such common law tort claims against the defendants; (ii) unlike in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), there is no state statute similar to section 1983 of the federal Civil Rights Act, which defines the scope and limits of the requested new cause of action; (iii) creating a new cause of action under Article I Section 6, which does not mention excessive force or the requirements for bringing such a cause of action, could impose huge financial burdens on municipal, local, and state government entities by opening them up to lawsuits for damages which lack defined boundaries; and (iv) the [*Schueller* court]

> believed the Delaware Legislature was the entity best suited to create a new cause of action, if it wished to do so.

*Winter*, 2020 WL 6940760, at *2 (quoting *Schueller*, 2017 WL 568344, at *2 & n.4). The *Winter* court then applied these factors to Article I, Section 11 and came to the "same conclusion." *Id.* Specifically, the *Winter* court found that (i) the plaintiff had alternative remedies (e.g., claims under the Eighth Amendment), (ii) there is no similar state statute to section 1983 of the Civil Rights Act that would serve to define the scope and limits of the action, (iii) the cause of action could impose "huge financial burdens on municipal, local, and state government entities by opening them up to lawsuits for damages which lack defined boundaries," and (iv) the Delaware State Legislature "is the entity best suited to create a new cause of action in this instance." *Id.* (quoting *Schueller*, 2017 WL 568344, at *2).

*Winter*'s holding and analysis regarding Article I, Section 11 has been cited approvingly by other courts, including the Delaware Superior Court. *Rodriguez*, 2023 WL 569358, at *6 (citing *Winter* favorably and stating that "*Schueller* applies equally to the constitutional violations alleged [under, *inter alia*, Article I, Section 11]"); *see also Evans v. Dematteis*, Civ. No. 20-1663-EJW, 2024 WL 1885554, at *11 (D. Del. Apr. 30, 2024) (Wallach, J., sitting by designation) (agreeing with *Winter*'s result and rationale, dismissing the Article I, Section 11 claims with prejudice).

In an attempt to distinguish the *Schueller-Winter* line of cases, Plaintiffs contend that the last clause of Article I, Section 11 provides Plaintiffs "additional protections, at least expressly, that the U.S. Constitution does not." D.I. 56 at 8. As Plaintiffs claim, *Winter* addressed only the "cruel and unusual" clause of Article I, Section 11. *Id.* However, the Court is not persuaded.

*First*, the courts addressing this issue, including *Winter*, have generally discussed the cause of action in light of the entire provision—Article I, Section 11—not the individual clauses thereof. *Winter*, 2020 WL 6940760, at *2 ("The Delaware state courts have not recognized a private right

16

of action under this Delaware Constitution *provision* and this Court predicts that they would not do so were the instant case pending in state court.") (emphasis added); *Evans*, 2024 WL 1885554, at *11 (agreeing with *Winter*).

*Second*, Delaware courts have stated that the Eighth Amendment and Article I, Section 11 provide the "same rights." *State v. Desmond*, No. 91009844DI, 2024 WL 3456225, at *6 (Del. Super. Ct. July 16, 2024) ("Under Delaware Supreme Court preceden[t], Article I, Section 11 provides the same rights as the Eighth Amendment.") (citation omitted).[3]

*Third*, even if the last clause of Article I, Section 11 was interpreted to be more expansive of the protections set forth in the Eighth Amendment, the remainder of the *Schueller* factors counsel against creation of a novel private right of action: (i) there is no statute similar to section 1983, (ii) the cause of action could create significant financial burdens on municipal, local, and state governments, and (iii) the Delaware State Legislature is the entity most-suited for crafting the contours of such a cause of action. *See Schueller*, 2017 WL 568344, at *2 & n.4; *Winter*, 2020 WL 6940760, at *2 (similar).

In sum, Article I, Section 11 of the Delaware Constitution does not provide a private right of action that would support Plaintiffs' second cause of action. Thus, the Court dismisses Plaintiffs' second cause of action with prejudice.

---

[3] *Cf. Fatir v. Recs.*, Civ. No. N23C-06-026, 2023 WL 6622214, at *4 (Del. Super. Ct. Oct. 11, 2023) ("Article I § 11's intended meaning refers to considerations for the health of prisoners *when building new prisons*, which Plaintiff fails to allege.") (emphasis added). The Court notes that, to the extent that the Delaware Supreme Court would interpret the provision as conferring rights with respect to the building of new prisons, Plaintiffs' Second Amended Complaint contains no allegations that SCI's construction would violate the Delaware Constitution.

### C. Plaintiffs' Third Cause of Action, Alleging Retaliation Under Article I, Section 11 of the Delaware Constitution, is Dismissed without Prejudice

Plaintiffs' Second Amended Complaint alleges that Plaintiffs' third cause of action is brought under "Article I, Section 11 of the Delaware Constitution." D.I. 51 at 10. Defendants move to dismiss this cause of action because (1) Article I, Section 11 does not permit a private right of action, (2) there is no support for a retaliation claim under Article I, Section 11, and (3) even if Article I, Section 11 did provide such authority, Plaintiffs' allegations fail to support a retaliation claim because they only allege the "mere possibility" of retaliation. D.I. 54 at 16-17. For the reasons set forth in the preceding section, the Court agrees with Defendants that this cause of action should be dismissed because Article I, Section 11 does not permit a private right of action.

Plaintiffs' opposition brief does not articulate any basis for Plaintiffs' retaliation claim arising under Article I, Section 11. Instead, Plaintiffs' opposition brief concedes that the Second Amended Complaint "incorrectly states that the retaliation claim is raised under Article I, Section II of the Delaware Constitution, when instead it should read as a violation of the First Amendment of the United States Constitution." D.I. 56 at 1 n.1; *see also id.* at 9 & n.3 (asserting that this was "erroneous" and offering to file a "corrected" version). Plaintiffs therefore request that the Court either construe the Second Amended Complaint to include a claim stated under the First Amendment or grant Plaintiffs leave to amend. D.I. 56 at 9-10.

As the Third Circuit has stated, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984), *cert. denied*, 470 U.S. 1054 (1984)). This flows from the rationale that a complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 179 (quoting *Conley v. Gibson*, 355 U.S. 41, 78 (1957)). Following

*Zimmerman*, many courts have rejected attempts by plaintiffs to assert new facts or theories in a brief opposing a motion to dismiss.[4]

Here, the Second Amended Complaint does not allege a cause of action under, or even mention, the First Amendment of the United States Constitution, which was cited for the first time in Plaintiffs' opposition brief. D.I. 56 at 1. As a result, Defendants primarily defended this cause of action as if it arose under the Delaware State Constitution. D.I. 54 at 16-17. The Court recognizes that federal pleading standards are primarily focused on the factual assertions of a pleading, not the legal theories asserted therein. Fed. R. Civ. P. 8(a)(2). However, it is not clear from the face of the Second Amended Complaint how Defendants would address this third cause of action, especially where Plaintiffs' cited authority cannot support it. Thus, the Court dismisses Plaintiffs' third cause of action without prejudice.

### D.     Plaintiffs May Move for Leave to Amend

Plaintiffs have requested leave to amend their pleading, in the event the Court dismisses Plaintiffs' claims for failure to state a claim under the first and third causes of action. D.I. 56 at 7, 10. As Defendants point out (D.I. 59 at 7), Plaintiffs may move to amend their pleading. *See* Fed. R. Civ. P. 15(a)(2); *see In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (noting that "leave [to amend] shall be freely given when justice so requires") (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 626 (1st Cir. 1996)).

---

[4] *See, e.g., McCoy v. Favata*, Civ. No. 17-1046-MN, 2019 WL 1429570, at *8 (D. Del. Mar. 29, 2019) ("Plaintiff cannot, however, use his brief opposing a Rule 12(b)(6) motion to dismiss to assert new theories or factual matter omitted from the Complaint."); *Wooten v. City of Wilmington*, Civ. No. 19-2133-RGA, 2021 WL 411707, at *3 (D. Del. Feb. 5, 2021) (declining to consider a hostile work environment theory under Title VII raised in the plaintiff's opposition briefing that was not claimed or alleged in the complaint); *Singh v. Illusory Sys., Inc.*, 727 F. Supp. 3d 500, 514 n.15 (D. Del. 2024) (dismissing claim where plaintiff argued a theory of "negligence per se" in their opposition brief but the words "negligence per se" were "nowhere" in the complaint).

The Court will defer on Plaintiffs' request for leave to amend until the parties brief the issue. While motions for leave are "freely given," *Burlington*, 114 F.3d at 1434, the Court will also have to address whether, *inter alia*, "the amendment [would be] futile." *Soria v. App Holdco, LLC*, Civ. No. 24-692-GBW, 2025 WL 2614104, at *4 (D. Del. Sept. 10, 2025) (declining to grant a request for leave to amend within an opposition brief); *see also Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 205-06 (3d Cir. 2006) (upholding the district court's decision in not granting leave to amend the complaint because the request was "nothing more" than two sentences in a response to a motion to dismiss); *Ramsgate Ct. Townhome Ass'n v. W. Chester Borough*, 313 F.3d 157, 161 (3d Cir. 2002) (same); *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1222 (11th Cir. 1999) ("Where a request for leave to file an amended complaint simply is [e]mbedded within an opposition memorandum, the issue has not been raised properly.") (citation omitted).

## V. CONCLUSION

For the above reasons, Defendants' Motion is granted-in-part and denied-in-part. In granting-in-part Defendants' Motion, Plaintiffs' First Cause of Action is dismissed without prejudice as to Defendants Morgan, Beck, Wise, and Maans. Plaintiffs' Second Cause of Action is dismissed with prejudice in its entirety. Plaintiffs' Third Cause of Action is dismissed without prejudice in its entirety. Defendants' Motion is otherwise denied. Plaintiffs may file a motion for leave to amend the Second Amended Complaint for the Court's consideration by no later than thirty (30) days from the entry of this Memorandum Opinion. An Order consistent with this Memorandum Opinion will be entered.