## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| D'ANDRE R. ROGERS and JERRY McGINNIS, JR.,<br><br>Plaintiffs,<br><br>v.<br><br>TRUMAN MEARS, JOSHUA NIBLETT, KEVIN BATES, CLAYTON MORGAN, MARVELLA WISE, RODNEY HUDSON, and DEAN BLADES,<br><br>Defendants. | | Civil Action No. 22-596-GBW |

Jeff Castellano, Angela C. Whitesell, Matthew S. Middleton, DLA PIPER LLP (US), Wilmington, DE; Gregory Ferroni, Derek Gretkowski, DLA PIPER LLP (US), Philadelphia, PA.

*Counsel for Plaintiffs*

Allison L. Texter, Nicholas E. Skiles, SWARTZ CAMPBELL LLC, Wilmington, DE.

*Counsel for Defendants*

## <u>MEMORANDUM OPINION</u>

July 8, 2026
Wilmington, Delaware

_____

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Plaintiffs D'Andre R. Rogers ("Mr. Rogers" or "Rogers") and Jerry McGinnis ("Mr. McGinnis" or "McGinnis") bring this action against Defendants Truman Mears ("Mears"), Joshua Niblett ("Niblett"), Kevin Bates ("Bates"), Clayton Morgan ("Morgan"), Marvella Wise ("Wise"), Rodney Hudson ("Hudson"), and Dean Blades ("Blades"), alleging violation of their civil rights in connection with their confinement. Now pending before the Court are the following motions:

(1) Defendants' Motion for Summary Judgment (D.I. 137), which has been fully briefed (D.I. 138; D.I. 148; D.I. 151);

(2) Defendant Blades's Motion to Dismiss for Failure to State a Claim ("Defendant Blades's Motion to Dismiss") (D.I. 132), which has been fully briefed (D.I. 133; D.I. 140; D.I. 143);

(3) Defendants' Motion to Dismiss Plaintiff J. McGinnis's Claims as Sanction Pursuant to Federal Rule of Civil Procedure 37(d) ("Defendants' Sanctions Motion") (D.I. 135), which has been fully briefed (D.I. 135; 142; D.I. 144); and

(4) Mr. McGinnis's Motion to Sever and Stay Pursuant to Federal Rule of Civil Procedure 21 ("Mr. McGinnis's Motion to Sever and Stay") (D.I. 141), which has been fully briefed (D.I. 142; D.I. 144; D.I. 146).[1]

For the reasons set forth below, the Court denies Mr. McGinnis's Motion to Sever and Stay, grants Defendants' Motion for Summary Judgment, and denies-as-moot Defendant Blades's Motion to Dismiss and Defendants' Sanctions Motion.

_____

[1] The briefing on Defendants' Sanctions Motion and Mr. McGinnis's Motion to Sever and Stay overlaps. *See* D.I. 142; D.I. 144.

## I.    BACKGROUND

### A.    Factual Background

#### 1.    Undisputed Facts

On or about January 5, 2022, Mr. Rogers submitted a grievance that concerned the presence of alleged black mold in the showers of his housing unit at Sussex Correctional Institution ("SCI"). D.I. 139 ¶ 3; *see also* D.I. 150 ¶ 3 (not disputing in relevant part). Roughly one week later, on or about January 14, 2022, Mr. McGinnis submitted a similar grievance, which concerned the presence of alleged black mold in the showers of his SCI housing unit. D.I. 139 ¶ 4; *see also* D.I. 150 ¶ 5 (not disputing in relevant part). In each of these respective grievances, Plaintiffs indicate that the black mold presented them with medical issues. D.I. 139 ¶ 5; *see also* D.I. 150 ¶ 5 (not disputing). Specifically, Mr. Rogers suffered asthma attacks. D.I. 149 ¶ 5; *see also* D.I. 151-1 ¶ 5 (not disputing in relevant part). Mr. McGinnis suffered chronic and severe sinus congestion, headaches, and stated that he "can't breathe due to congestion." D.I. 149 ¶ 4; *see also* D.I. 151-1 ¶ 4 (not disputing in relevant part). Defendants never ordered any testing of the mold in the showers of SCI. D.I. 149 ¶ 8; *see also* D.I. 151-1 ¶ 8 (not disputing). Neither party served an expert report in this action. D.I. 139 ¶ 13; *see also* D.I. 150 ¶ 13 (not disputing in relevant part).

#### 2.    Disputed Facts

The parties dispute whether Plaintiffs' medical issues are attributable to mold exposure, and whether Plaintiffs were ever exposed to mold at all. *See, e.g.*, D.I. 149 ¶¶ 4, 5, 11; D.I. 151-1 ¶¶ 4, 5, 11. The parties also dispute whether the Occupational Safety and Health Administration ("OSHA") conducted scientific tests on mold samples from the shower facilities sent by Mr. Rogers. *See* D.I. 149 ¶ 7, D.I. 151-1 ¶ 7. The parties further dispute whether any shakedowns or housing moves experienced by Plaintiff Rogers were related to his grievances about mold. *See* D.I. 149 ¶ 9; D.I. 151-1 ¶ 9. Lastly, the parties dispute whether Defendants violated any

2

department policy, and whether they refused to clean the showers despite being aware of any health complaints by Plaintiffs. D.I. 149 ¶¶ 14-15; D.I. 151-1 ¶¶ 14-15.

**B.    Procedural History**

On May 2, 2022, this action was commenced by six plaintiffs proceeding *pro se*—Mr. Rogers, Mr. McGinnis, Evan Dayton ("Dayton"), Jason Kashner ("Kashner"), Darnell Seeney ("Seeney"), and La'Teef Dickerson ("Dickerson")—against several defendants, including many of the currently asserted Defendants. D.I. 3 (Original Complaint). On July 12, 2022, the Court issued an Oral Order requiring the Plaintiffs to sign the Original Complaint. D.I. 27. Seeney was dismissed by the Court on September 16, 2022 for failure to sign the Original Complaint. D.I. 43.

On November 14, 2022, the Court issued a Memorandum Opinion under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(a) dismissing Dayton, McGinnis, Kashner, and Dickerson, leaving only Mr. Rogers. D.I. 44 at 9-10; *Rogers v. Mears*, Civ. No. 22-596-GBW, 2022 WL 16948758, at *4 (D. Del. Nov. 14, 2022). In the accompanying Order, the Court ordered that "[Mr.] Rogers may proceed with the conditions of confinement claims raised against Defendants [Mears, Niblett, Bates, and Hudson]." D.I. 45. All other defendants, and the claims against them, were dismissed. *Id.* The Court further stayed the matter pending an attempt to refer representation of Mr. Rogers. *Id.*

On September 8, 2023, after having obtained counsel, Plaintiffs filed their Second Amended Complaint. D.I. 51. The Second Amended Complaint alleged causes of action by both Plaintiffs against then-asserted Defendants for (1) violation of the Eighth Amendment of the United States Constitution as applied through the Due Process Clause of the Fourteenth Amendment (D.I. 51 ¶¶ 37-44), and (2) violation of Article 1, Section 11 of the Delaware Constitution (D.I. 51 ¶¶ 45-48). The Second Amended Complaint further alleged a third cause of

3

action, brought only by Mr. Rogers against Defendants Niblett, Maans,[2] Bates, and Hudson, for violation of Article 1, Section 11 of the Delaware Constitution (D.I. 51 ¶¶ 49-54).

On February 2, 2024, Defendants filed a motion to dismiss Plaintiffs' Second Amended Complaint for Failure to State a Claim. *See* D.I. 53. On November 17, 2025, the Court issued a Memorandum Opinion dismissing Plaintiffs' claims (1) under the Eighth Amendment against Defendants Morgan, Beck, Wise, and Maans without prejudice, (2) under Article 1, Section 11 of the Delaware Constitution against all Defendants with prejudice, and (3) for retaliation under Article 1, Section 11 of the Delaware Constitution against Defendants Niblett, Maans, Bates, and Hudson, without prejudice. *See generally* D.I. 114.

On December 19, 2025, Plaintiffs filed their Third Amended Complaint, which is the operative pleading in this action. D.I. 124. The Third Amended Complaint alleges causes of action by both Plaintiffs (1) for violation of the Eighth Amendment of the United States Constitution as applied through the Due Process Clause of the Fourteenth Amendment against all Defendants (D.I. 124 ¶¶ 49-56), and (2) for violation of the First Amendment as applied through the Due Process Clause of the Fourteenth Amendment against Defendants Niblett, Bates, and Hudson (D.I. 124 ¶¶ 57-62).

## II.    LEGAL STANDARD

### A.    Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that could lead a reasonable jury to find in favor of the nonmoving party." *Bletz v. Corrie*, 974 F.3d 306, 308 (3d Cir. 2020) (citing *Willis v.*

---

[2] Defendant Maans has since been dismissed from the action. *See* D.I. 45.

*UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). "The court must review the record as a whole, draw all reasonable inferences in favor of the nonmoving party, and must not 'weigh the evidence or make credibility determinations.'" *Id.* at 308 (quoting *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016)).

"On an issue as to which the moving party bears the burden of proof at trial, . . . the party seeking summary judgment must 'establish the absence of a genuine factual issue.'" *Brit. Telecommunications PLC v. IAC/InterActiveCorp*, Civil Action No. 18-366-WCB, 2025 WL 2240699, at *2 (D. Del. Aug. 5, 2025) (Bryson, J., sitting by designation) (quoting *Resol. Tr. Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992)). "If the motion does not persuasively establish that no factual issue exists, summary judgment should be denied 'even if no opposing evidentiary matter is presented.'" *Id.* (quoting *Resol. Tr. Corp*, 960 F.2d at 340). "Once the moving party with the burden of proof makes a showing that there is no genuine factual issue, that party is entitled to summary judgment 'unless the non-moving party comes forward with probative evidence that would demonstrate the existence of a triable issue of fact.'" *Id.* (quoting *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003)).

Any party asserting that a fact is or is not genuinely disputed must support that assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . or other materials," or by "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Generally, the Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

**B.    Eighth Amendment Deliberate Indifference as Incorporated by the Fourteenth Amendment**

"The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, . . . prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991) (citing *Robinson v. California*, 370 U.S. 660, 666 (1962)). "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Hudson v. McMillian*, 503 U.S. 1 (1992)). "The [Eighth] Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care and must 'take reasonable measures to guarantee the safety of the inmates' . . . ." *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

In the Third Circuit, "[t]o determine whether prison officials have violated the Eighth Amendment [based on conditions of confinement], [courts] apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (alterations in original) (quoting *Farmer*, 511 U.S. at 834).

"To satisfy the objective prong of this test 'the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.'" *Porter*, 974 F.3d at 441 (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019)). "The proof necessary to show that there was a substantial risk of harm is less demanding than the proof needed to show

6

that there was a probable risk of harm." *Id.* (quoting *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 227 (3d Cir. 2015)). "To satisfy the subjective prong of the Eighth Amendment test, an inmate must show that the prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Porter*, 974 F.3d at 444 (quoting *Chavarriaga*, 806 F.3d at 229). "The inmate 'may demonstrate deliberate indifference by showing that the risk of harm was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past such that defendants must have known about the risk.'" *Id.* at 445 (quoting *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259 (3d Cir. 2010)).

Lastly, "[i]t is axiomatic that 'a § 1983 action, like its state tort analogs, employs the principle of proximate causation.'" *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000) (quoting *Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir. 1999)). "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the [defendant's action] and the specific deprivation of constitutional rights at issue." *Id.* (alterations in original) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

### C.    Retaliation Under the First Amendment

To establish a retaliation claim, a plaintiff must prove that "(1) he was engaged in constitutionally protected conduct, (2) 'he suffered some "adverse action" at the hands of prison officials,' and (3) 'his constitutionally protected conduct was "a substantial or motivating factor" in the decision' to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). "Because motivation is almost never subject to proof by direct evidence, [a plaintiff] must rely on circumstantial evidence to prove a retaliatory motive. He can satisfy his burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a

pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

## III.  DISCUSSION

The Court divides its discussion into four sections.  First, the Court addresses Mr. McGinnis's Motion to Stay and Sever.  Second, the Court addresses Defendants' Motion for Summary Judgment regarding Plaintiffs' Eighth Amendment claim.  Third, the Court addresses Defendants' Motion for Summary Judgment regarding Plaintiff Mr. Rogers's First Amendment claim.  Fourth, the Court denies-as-moot Defendant Blades's Motion to Dismiss and Defendants' Sanctions Motion.

### A.    The Court Denies Mr. McGinnis's Motion to Stay and Sever

After the close of fact discovery and the filing of Defendants' Motion for Summary Judgment, Mr. McGinnis filed his Motion to Sever and Stay. D.I. 141.  Filed as a response to Defendants' Sanctions Motion, which sought to dismiss Mr. McGinnis's claim as a sanction for his failure to appear at a deposition, Mr. McGinnis's Motion to Stay and Sever seeks to "sever Mr. McGinnis's claim under Federal Rule of Civil Procedure 21 and stay his case until Mr. Rogers's case concludes or until Mr. McGinnis is available for a deposition." D.I. 142 at 1.  As is relevant to Mr. McGinnis's Motion to Sever and Stay, "despite repeated attempts over the course of months, plaintiffs' counsel has been unable to contact Mr. McGinnis and does not currently have any reason to believe that Mr. McGinnis will be present at trial or able to direct counsel to pursue his claims at trial." D.I. 156; *see also id.* ("Whether the Court dismisses or stays Mr. McGinnis's claims, Mr. McGinnis is not expected to be a part of the currently scheduled trial.").

*First*, the Court denies Mr. McGinnis's motion to the extent it seeks a stay.  "Courts generally consider three factors to determine whether a stay is appropriate: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether

discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage." *Kituwah LLC v. Experiential Ventures Hosp. LLC*, C.A. No. 25-686-GBW, 2026 WL 242197, at *2 (D. Del. Jan. 29, 2026) (quoting *Ferrari v. Forbes Media LLC*, C.A. No. 25-12-GBW, 2025 WL 860064, at *3 (D. Del. Mar. 19, 2025)).

In the present action, all three factors weigh in favor of denying Mr. McGinnis's request for a stay. First, granting a stay is not likely to simplify the issues for trial, as Mr. McGinnis's Eighth Amendment claim will remain, his claim is likely to result in further (and largely duplicative) motion practice after the stay is lifted, and the resolution of Mr. Rogers's claims will not necessarily simplify any issues regarding Mr. McGinnis's claims. Second, the stage of litigation weighs against a stay because discovery in this action is complete, briefing on Defendants' Motion for Summary Judgment is complete, and this action is on the eve of trial. *See Jazz Pharms., Inc. v. Avadel CNS Pharms. LLC*, C.A. No. 22-941-GBW, 2025 WL 1529799, at *3 (D. Del. May 29, 2025) (second factor weighed against a stay where discovery was closed, the parties had filed case dispositive motions, and trial was scheduled to begin in less than six months); *see also id.* ("Typically, courts are loath to stay cases that are so far advanced and close to trial."). Third, delay at this juncture would unduly prejudice Defendants, since Mr. McGinnis's requested relief would require re-opening discovery, may require many Defendants to have to attend trial twice, and would require Defendants to incur these burdens because of Mr. McGinnis's unavailability, for which Plaintiffs have provided no explanation. Moreover, it is unclear whether Mr. McGinnis will be available for a deposition or trial if the Motion to Sever and Stay is granted. Accordingly, the Court finds that the applicable factors weigh against granting a stay.

9

*Second*, the Court denies Mr. McGinnis's motion to the extent it seeks severance. "It is well settled that a district court has wide latitude in determining whether to sever claims for trial by weighing the competing interests of the parties and attempting to maintain a fair balance." *Henkel v. Highgate Hotels, LP*, No. 3:15-CV-01435, 2022 WL 23029029, at *4 (M.D. Pa. Sept. 30, 2022) (citations omitted). Rule 21 of the Federal Rules of Civil Procedure provides, in relevant part, that the Court "*may* . . . sever any claim against a party." Fed. R. Civ. P. 21 (emphasis added).[3] In addressing whether to grant a motion seeking severance of claims, courts within the Third Circuit often consider the following factors: "(1) whether the issues sought to be severed are significantly different from one another and would require distinct evidentiary proof; (2) whether severance would promote judicial economy; and (3) whether either party will be unduly prejudiced by severance or its absence." *Riley v. PrimeCare Med., Inc.*, No. 4:20-CV-00325, 2026 WL 1078894, at *7 (M.D. Pa. Apr. 20, 2026) (quoting *Henderson*, 639 F. Supp. 3d at 486-87).

In the present action, all three factors weigh against severance. First, while Mr. McGinnis's Eighth Amendment claim would require some distinct evidentiary proof from Mr. Rogers's claim (e.g., evidence regarding Mr. McGinnis's health), both claims involve significantly similar issues, the same Defendants, and much of the same underlying evidence. Second, severance would not promote judicial economy. *See, e.g., Riley*, 2026 WL 1078894, at *7 (reasoning that this factor weighed against severance because "maintaining one trial would preserve judicial economy by allowing all evidence to be presented at once, rather than repetitively in multiple trials"). Third, Defendants "would be prejudiced by requiring them to undertake two . . . trials, at which they

---

[3] "Unlike bifurcation of claims under Rule 42(b), severance under Rule 21 creates independent actions resulting in separate judgments." *Henderson v. Mahally*, 639 F. Supp. 3d 481, 486 (M.D. Pa. 2022) (citation omitted); *see also id.* at 487 (observing that the same considerations are often analyzed when addressing severance and bifurcation).

would be required to present much [of] the same evidence." *Id.* at *8. The prejudice to Defendants outweighs any purported prejudice to Mr. McGinnis from denying severance, given that Mr. McGinnis's own unavailability prompted the filing of the Motion to Sever and Stay.

For the foregoing reasons, the Court denies Mr. McGinnis's Motion to Sever and Stay (D.I. 141).

**B.    The Court Grants Defendants' Motion for Summary Judgment On Plaintiffs' Eighth Amendment Claim**

Defendants move for summary judgment on Plaintiffs' Eighth Amendment claim based on Defendants' deliberate indifference to the alleged presence of black mold in the showers of Plaintiffs' housing units in the Delaware Department of Correction that allegedly caused Plaintiffs' health problems. D.I. 138 at 3. As explained above, *supra* Section II.B, to prove an Eighth Amendment claim based on conditions of confinement, Plaintiffs must satisfy both the objective and subjective prongs of the two-prong test, as well as establish causation. Defendants reason that "Plaintiffs have insufficient evidence to support the objective prong as a matter of law," as well as fail to "present competent causation evidence." D.I. 138 at 6, 8.

The Court first addresses the issue of causation – whether Plaintiffs can establish that any mold exposure caused Plaintiffs substantial harm. Defendants assert that Plaintiffs' claimed medical ailments of asthma, sinus congestion, and headaches, are supported by "nothing more than Plaintiffs' conclusory opinions that they were harmed by mold." *Id.* at 8-10. In Defendants' view, "[a]bsent medical, scientific, or other evidence, the Court cannot infer that" the mold conditions "caused Plaintiffs' symptoms or harm." *Id.* at 10. Therefore, since Plaintiffs did not submit an expert report, Defendants reason that summary judgment is warranted. *See id.* at 7. Plaintiffs disagree, contending that expert testimony is not required to establish causation for deliberate indifference claims because "a jury may reasonably infer causation without the need for expert

11

testimony where, as here, inmates developed or aggravated their respiratory symptoms while being repeatedly exposed to a mold-infested environment because these symptoms are consistent with commonly known effects of mold exposure." D.I. 148 at 6.

The Court agrees with Defendants and finds that, even viewing the evidence presented in the light most favorable to Plaintiffs, Plaintiffs cannot show that the alleged mold caused Plaintiffs' medical symptoms absent medical records and expert testimony. Plaintiffs have presented evidence suggesting that the shower facilities contained mold during the relevant time period, and that several of the Defendants were aware of the mold. *See, e.g.*, D.I. 148-6, Ex. F (8/11/2021 email chain including Defendant Bates discussing mold in showers); D.I. 148-7, Ex. G (1/11/2022 email chain including Defendant Bates referencing a grievance about mold in showers); D.I. 148-4, Ex. D (4/14/2022 email chain including Defendants Hudson, Morgan, Niblett, and Bates discussing mold in showers); D.I. 148-8, Ex. H (5/15/2022 sanitation inspection sheet including comment about "[m]old in shower area" signed by Defendants Morgan and Niblett); D.I. 148-9, Ex. I (5/4/2023 sanitation inspection sheet including comment about "[m]old in shower area" signed by Defendants Morgan and Niblett); D.I. 148-5, Ex. E (forwarded 7/21/2022 email chain including Defendants Niblett, Bates, and Morgan discussing mold in showers and efforts taken to power wash and clean the showers, describing the mold as being "located near the floor, but on the walls as well"); D.I. 148-10, Ex. J (5/4/2024 sanitation inspection sheet including comment about mold in shower signed by Defendant Morgan). Plaintiffs have also presented evidence suggesting that they submitted grievance forms regarding mold, which mentioned health conditions that Plaintiffs attribute to mold exposure. *See, e.g.*, D.I. 148-12, Ex. L (1/5/2022 grievance form submitted by Mr. Rogers regarding mold in the shower and asthma attacks); D.I. 148-11, Ex. K (1/14/2022 grievance form submitted by Mr. McGinnis regarding mold in the

12

shower and chronic headaches and sinus congestion); D.I. 148-15, Ex. O (7/21/2022 grievance form submitted by Mr. Rogers regarding mold in the showers); D.I. 148-16, Ex. M (8/5/2022 grievance form submitted by Mr. Rogers regarding mold in the shower).  Lastly, Plaintiffs have presented evidence that Mr. McGinnis made sick call requests regarding symptoms such as headaches, nasal congestion, and nosebleeds.  *See* D.I. 148-13, Ex. M (1/31/22 sick call request form, citing headaches and sever nasal congestion, referencing treatment received after an earlier filed sick call request); D.I. 148-28, Ex. AB.

For causation, critically absent from Plaintiffs' evidence is anything beyond their own testimony tying their medical conditions to mold exposure.  *First*, Plaintiffs have not provided medical records pertaining to their asthma, headaches, or nasal congestion, much less records specifically attributing Plaintiffs' health conditions to mold exposure.  The only evidence of Plaintiffs' medical conditions resulting from mold arises from their sworn testimony, along with the grievances and sick calls.  Without any medical records, no reasonable juror could find that mold exposure caused Plaintiffs' medical conditions.  *See Smith v. D'Ilio*, C.A. No. 16-7633 (ZNQ) (TJB), 2025 WL 1779186, at *19 (D.N.J. June 23, 2025) (finding Plaintiffs' testimony insufficient to show causation between cell conditions and asthma attacks absent medical records); *see also id.* (collecting cases where courts granted summary judgment in similar situations absent medical records).

*Second*, the only medical testing that Plaintiffs provided is documentation of Mr. Rogers's lung function dated July 24, 2021, several months prior to Mr. Rogers's mold grievance.  *See* D.I. 148-14, Ex. N.  Interpretation of those test results would require testimony from a qualified expert, which Plaintiffs have not provided.  *See* Fed. R. Evid. 702.  But even if Plaintiffs *could* present this lung test to a jury without expert testimony, no reasonable juror could infer that Mr. Rogers's

poor lung function was attributable to mold exposure, since Mr. Rogers has not proffered any comparative lung test from before his alleged mold exposure began in July 2020. *See* D.I. 124 ¶ 15 (alleging black mold began around July 2020); D.I. 148-18, Ex. R, at 83:23-92:20 (same). Further, Mr. Rogers allegedly suffered from asthma prior to any mold exposure, which could have caused or contributed to his lung function results. *See* D.I. 124 ¶ 19 (discussing Mr. Rogers's childhood asthma).

*Third*, Plaintiffs' failure to provide any expert testimony regarding causation is fatal to their Eighth Amendment claim. Plaintiffs contend that lack of expert testimony is a non-issue because, citing *Boring v. Kozakiewicz*, 833 F.2d 468 (3d Cir. 1987), expert testimony is not required when the harm would be apparent to a layperson. D.I. 148 at 5-6. In quoting *Boring*, Plaintiffs conveniently omit the court's example of the type of injury that qualifies as apparent to a layperson: a gunshot wound. 833 F.2d at 473. Certainly, a layperson could reasonably and accurately identify a causal connection for an injury with only one plausible explanation, as in the case of a gunshot wound. However, in the instant action, the circumstances differ markedly. The medical conditions Plaintiffs claim to have, such as asthma, nasal congestion, and chronic headaches, are all of the sort that can have a myriad of causes.[4] While a layperson may know that Plaintiffs' symptoms *can* be caused by mold exposure, a layperson cannot rule out other causes without expert testimony. Indeed, courts have regularly declined to infer causation absent expert testimony in Eighth Amendment mold cases, as well as other Eighth Amendment cases involving similarly attenuated chains of causation. *See, e.g.*, *Swiderski v. Harmon*, C.A. No. 19-2321, 2020 WL

---

[4] *See, e.g.*, *Diaz v. Johnson Matthey, Inc.*, 893 F. Supp. 358, 376 (D.N.J. 1995) (observing that "[p]ersistent asthma is an extremely common affliction that has multiple physical, and maybe emotional, causes" and that "[a] meaningful diagnosis of specific causation must specifically negate other possible causes").

14

6286720, at *11 (E.D. Pa. Oct. 27, 2020) (declining to infer causation in a mold exposure case "[a]bsent expert testimony[] or any evidence"); *Edwards v. Northampton Cnty.*, C.A. No. 12-5323, 2016 WL 7654661 (E.D. Pa. Apr. 29, 2016), *aff'd*, 663 F. App'x 132 (3d Cir. 2016) ("The Court is unable to infer, absent expert testimony, that the conditions of [Plaintiff's] cell caused [an infection].").

Because Plaintiffs have failed to provide medical records or expert testimony, no reasonable juror could infer that mold exposure caused Plaintiffs' health conditions for purposes of Plaintiffs' Eighth Amendment deliberate indifference claim. Since Plaintiffs have failed to establish a genuine dispute of material fact regarding causation, the Court need not analyze the sufficiency of Plaintiffs' evidence regarding the other prongs of the deliberate indifference test.

Thus, the Court grants Defendants' Motion for Summary Judgment with respect to Plaintiffs' Eighth Amendment claim.

### C.  The Court Grants Defendants' Motion for Summary Judgment On Plaintiff Mr. Rogers's First Amendment Claim

Defendants move for summary judgment on Plaintiff Mr. Rogers's First Amendment claim for retaliation, reasoning that Mr. Rogers "fails to demonstrate that he either suffered an adverse action at the hands of the prison officials identified for such action, or that the protected activity was a substantial or motivating factor in the decision to discipline him." D.I. 138 at 10. In support of their motion, Defendants claim that many of the allegedly retaliatory events "did not relate to any mold grievance" or "occurred prior to his mold grievance and the filing of this lawsuit." *Id.* Plaintiffs respond that the record supports several retaliatory acts following Mr. Rogers's mold grievances and the original Complaint filing, including increased shakedowns, an upsetting housing move, and returned grievances raising retaliatory conduct. D.I. 148 at 11-12. In reply to

Plaintiffs, Defendants point out that the retaliatory acts mentioned by Plaintiffs all concern individuals other than Defendants. D.I. 151 at 6.

As mentioned *supra* Section II.C, to prove a retaliation claim under the First Amendment, Mr. Rogers must satisfy three prongs, which the Court addresses in turn. *First*, Mr. Rogers must have been engaged in constitutionally protected conduct. The parties do not dispute that Mr. Rogers's filing of mold grievances and the Complaint in this action are constitutionally protected conduct. *See Watson*, 834 F.3d at 422-23 (filing a grievance to a corrections officer is protected by the First Amendment).

*Second*, Mr. Rogers must have suffered an adverse action at the hands of prison officials. In determining what constitutes an adverse action, the Third Circuit has clarified that the action "need not be great in order to be actionable," but "must be more than *de minimis*." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)); *see also Brennan v. Norton*, 350 F.3d 399, 422 n.17 (3d Cir. 2003) ("The cumulative impact of retaliatory acts may become actionable even though the actions would be *de minimis* if considered in isolation."). Plaintiffs have provided evidence suggesting that Mr. Rogers experienced adverse actions at the hands of prison officials after he filed mold grievances and the Complaint in this action. In addition to Mr. Rogers's sworn testimony regarding shakedowns and an upsetting housing move after the mold grievances were filed, *see* D.I. 148-18, Ex. R, Plaintiffs point to multiple grievances filed by Mr. Rogers where he alleges that officers didn't want to help him, threatened to move him, or ignored posted rules, all in retaliation against him. *See* D.I. 148-21, Ex. U; D.I. 148-22, Ex. V; D.I. 148-23, Ex. W. A reasonable juror could find that the cumulative impact of these actions amounts to an adverse action at the hands of prison officials.

16

*Third*, Mr. Rogers's filing of mold grievances and/or the Complaint in this action must have been a substantial or motivating factor in the adverse action. As discussed *supra* Section II.C, in order to meet this prong Plaintiffs must show either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson*, 834 F.3d at 422. Here, Plaintiffs fail to provide evidence creating a genuine issue of material fact and, thus, Mr. Rogers's First Amendment claim fails.

As a threshold issue, Plaintiffs have not shown that any adverse action that Mr. Rogers experienced – including pat downs, shakedowns, and a housing move – was at the hands of the named Defendants. *See Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009) (affirming summary judgment in favor of Defendant where that retaliation claim was against a Defendant who was not the target of Plaintiff's constitutionally protected activity). Many of the adverse actions that Mr. Rogers suffered in the aftermath of his mold grievances or after the filing of his Complaint are only attributable to individuals other than the named Defendants. As for the housing move, Mr. Rogers's deposition testimony refers only to Ms. Wise and Sgt. Steele as the individuals that made the decision to move Mr. Rogers to a different building. *See* 148-18, Ex. R, at 25:3-28:3. Moreover, the multiple grievances that Mr. Rogers filed alleging retaliatory acts were all directed at individuals other than the Defendants, including individuals like Mr. Evans, Ms. Musser, Staff Sgt. Smith, and Sgt. Moyer. *See* D.I. 148-21, Ex. U; D.I. 148-22, Ex. V; D.I. 148-23, Ex. W. While one of the grievances mentions Defendant Niblett, this grievance does not mention a retaliatory act by Niblett. *See* D.I. 148-21, Ex. U (6/22/2023 grievance). Rather, Mr. Rogers claims that writing Niblett up led other individuals to retaliate against Mr. Rogers. *Id.* This grievance form also describes the matter as "[o]ngoing" and expresses Mr. Rogers's

17

frustration about not having been moved from his building after being "stuck" there for twelve years, *see id.*, a time period that reaches back far beyond Mr. Rogers's protected activity.

As for pat downs and shakedowns conducted by the CERT team generally, Plaintiffs refer to the deposition testimony of Defendants Blades and Niblett for the proposition that Mr. Rogers experienced shakedowns and that no records are kept regarding the frequency of when an inmate is patted down. *See* D.I. 148 at 11-12. Regarding the alleged pat downs, Plaintiffs have neither offered testimony from Mr. Rogers or any named Defendant, nor cited any other record evidence suggesting that Mr. Rogers experienced pat downs at all following his mold grievances. Without any such record evidence, the Court cannot take Plaintiffs at their word based on the bare allegations of the complaint. *See* D.I. 148 (citing the Third Amended Complaint for the proposition that Mr. Rogers experienced increased pat downs); *see also Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000) ("At summary judgment, a plaintiff cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial."). Regarding shakedowns, Plaintiffs cite deposition testimony suggesting that Mr. Rogers experienced a shakedown, but that testimony never indicates that it was conducted by any of the named Defendants. *See, e.g.*, 148-19, Ex. S, at 155:12-15 (suggesting, but not confirming, that Sgt. Moyer conducted a shakedown of Mr. Rogers). Similarly, Mr. Rogers's sworn deposition testimony does not specify who conducted any shakedown he experienced. *See* D.I. 148-18, Ex. R, at 30:8-33:1 (referring generally to the "CERT team" as "a team of officers from all over").

Even assuming, *arguendo*, that any shakedowns following Mr. Rogers's mold grievances or after the filing of his Complaint were at the hands of the named Defendants, Plaintiffs still could not create a genuine issue of material fact regarding the motive of the Defendants in conducting

18

said shakedowns. Specifically, Plaintiffs have not established a genuine issue of material fact regarding (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link. Regarding the first prong, Plaintiffs have presented no evidence of any shakedown occurring in close proximity to Mr. Rogers's mold grievance filings. Regarding the second prong, Plaintiffs have presented no evidence that any shakedown following the mold grievance filings was a part of a larger pattern of antagonism. For instance, Mr. Rogers's testimony only discusses "mass shakedowns" that every prisoner in the area was subjected to. *See* D.I. 148-18, Ex. R, at 28:18-30:20 (specifying that the mass shakedowns occurred for everyone in the "A-Tier, Medium Building"). Similarly, Mr. Rogers testified in his deposition regarding an instance where he was improperly written up for a fan in the common area that did not belong to him. *See id.* Yet, Mr. Rogers clarifies in that testimony that everyone who was subjected to that mass shakedown received an identical write-up for the fan. *Id.* at 28:14-16 ("[The CERT team] took all of us out of the area and wrote all of us up for [the fan].").

In light of these deficiencies, Plaintiffs cannot show a genuine dispute of fact as to whether filing the mold grievances or the Complaint in this action was a substantial or motivating factor in any adverse action that Mr. Rogers experienced by the named Defendants. *See Royster*, 308 F. App'x at 579. Thus, the Court grants Defendants' Motion for Summary Judgment with respect to Mr. Rogers's First Amendment claim.

19

**D.      The Court Denies as Moot Defendant Blades's Motion to Dismiss and Defendants' Sanctions Motion**

For the reasons discussed above, the Court granted summary judgment in favor of Defendants and against Plaintiffs on each of Plaintiffs' causes of action.[5] In resolving Defendants' Motion for Summary Judgment, the Court resolved all claims involving Mr. McGinnis and Blades. As a result, the Court denies-as-moot Defendant Blades's Motion to Dismiss (D.I. 132) and Defendants' Sanctions Motion (D.I. 135). *See Kimbleton v. White*, C.A. No. 12-974-GMS, 2014 WL 4386760, at *9 (D. Del. Sept. 4, 2014), *aff'd*, 608 F. App'x 117 (3d Cir. 2015) ("Furthermore, having granted summary judgment, the court denies the Defendants' previous motion to dismiss for failure to state a claim as moot.").

## IV.      CONCLUSION

For the foregoing reasons, the Court denies Mr. McGinnis's Motion to Sever and Stay (D.I. 141), grants Defendants' Motion for Summary Judgment (D.I. 137), and denies-as-moot Defendant Blades's Motion to Dismiss (D.I. 132) and Defendants' Sanctions Motion (D.I. 135).

---

[5] Given that the Court grants summary judgment in favor of Defendants on Plaintiffs' Eighth Amendment and First Amendment claims, the Court declines to address Defendants' asserted sovereign and qualified immunity defenses.